FANT et al. v. SULLIVAN et al.†

(Court of Civil Appeals of Texas. San Antonio. Nov. 13, 1912. On motion for Rehearing, Jan. 8, 1913.)

1. JUDGMENT (§ 199*)—SPECIAL VERDICT—JUDGMENT NOTWITHSTANDING VERDICT.

Under Sayles' Ann. Civ. St. 1897, arts. 1330–1333, 1335, providing that a special verdict must find the facts established, and that the court must render judgment thereon or grant a new trial, a judgment notwithstanding the verdict is improper.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 367–375; Dec. Dig. § 199.*]

2. APPEAL AND ERROR (§ 934*)—JUDGMENT—SPECIAL VERDICT—PRESUMPTIONS.

Sayles Ann. Civ. St. 1897, art. 1331, providing that on appeal an issue not submitted and not requested by a party to the cause shall be deemed as found by the court so as to support the judgment, where there is evidence to sustain such a finding, can only be applied to aid a judgment actually entered, and a plaintiff appealing from an adverse judgment entered notwithstanding the verdict may not require the court on appeal to assume that an issue not submitted was found by the court in his favor, especially where defendant requested the submission of the issue, and assigned a cross-error complaining of the refusal so to do.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781; Dec. Dig. § 934.*]

3. APPEAL AND ERROR (§ 1028*)—HARMLESS ERROR—ERRORS NOT AFFECTING RESULT.

The court on appeal will affirm a judgment, where the evidence is such that the court on appeal can say that it does not admit of any judgment other than that rendered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4034; Dec. Dig. § 1028.*]

4. APPEAL AND ERROR (§ 294*)—SPECIAL VERDICT—CONCLUSIVENESS.

A special verdict is conclusive between the parties as to the facts found unless set aside on motion for new trial, and cannot be questioned on appeal unless such motion is made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1727–1735; Dec. Dig. § 294.*]

5. APPEAL AND ERROR (§ 1073*)—HARMLESS ERROR—JUDGMENT.

While the court on appeal may not affirm a judgment rendered notwithstanding the verdict for any insufficiency of the evidence on a matter on which the jury made a finding, yet, where there is undisputed evidence outside of

the facts found by reason of which a judgment should have been directed for the party in whose favor the judgment was rendered, the judgment may be affirmed, since appellant is not prejudiced by a judgment entered under erroneous procedure where by a different process the court should have entered the same judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. § 1073.*]

6. LIBEL AND SLANDER (§§ 131, 134*)—SLANDER OF TITLE—ELEMENTS.

A statement, to constitute a slander of title, must be false, and must have been made maliciously, and not under a bona fide claim.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 388, 390; Dec. Dig. §§ 131, 134.*]

7. LIBEL AND SLANDER (§ 139*)—SLANDER OF TITLE—BURDEN OF PROOF.

A plaintiff suing for slander of title has the burden of proving the falsity of the statement complained of, and that the statement was made maliciously.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 393–396; Dec. Dig. § 139.*]

8. LIBEL AND SLANDER (§ 139*)—SLANDER OF TITLE—FALSITY OF STATEMENT—EVIDENCE.

In an action for slander of title, evidence *held* not to show the falsity of the statement complained of.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 393–396; Dec. Dig. § 139.*]

9. NEW TRIAL (§ 104*)—GROUNDS—NEWLY DISCOVERED EVIDENCE—MATERIALITY.

Where no case was made, though a fact was conceded as established, newly discovered evidence to establish the fact was not ground for a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 218–220, 228; Dec. Dig. § 104.*]

On Motion for Rehearing.

10. APPEAL AND ERROR (§ 1073*)—JUDGMENT NOTWITHSTANDING VERDICT—RECITALS—EFFECT.

A recital in a judgment that the court rendered it notwithstanding the verdict does not render the judgment void, and does not alone justify the reversal of the judgment to render a judgment to the same effect.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. § 1073.*]

11. APPEAL AND ERROR (§ 1073*)—JUDGMENT—SPECIAL VERDICT.

Where the trial court should have directed a verdict on an issue not submitted, the court on appeal from a judgment notwithstanding the verdict may ignore the verdict on the other issues which, by reason of the evidence on the issue not submitted, has become immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. § 1073.*]

12. LIBEL AND SLANDER (§ 139*)—SLANDER OF TITLE—EVIDENCE—SUFFICIENCY.

In an action for slander of title based on the statement that a tract was subject to a trust deed, evidence *held* not to justify a finding that the tract was exempted from the trust deed describing other property and containing a general provision that it covered tracts, whether specifically described or not.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 393–396; Dec. Dig. § 139.*]

13. APPEAL AND ERROR (§ 1122*)—REQUEST FOR FINDINGS.

The mere fact of rendition of a judgment on a petition does not establish the truth of every fact stated in the petition, and the court on appeal will not find as a finding of fact the truth of the allegations of the petition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4420; Dec. Dig. § 1122.*]

Appeal from District Court, Bexar County; A. W. Seeligson, Judge.

Action by Ermi Fant and D. R. Fant, prosecuted after their death by D. R. Fant, Jr., and others, against D. Sullivan and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

Francis J. Kearful, Reagan Houston, Jr., Geo. R. Thomson, and Reagan Houston, all of San Antonio, for appellants. Newton & Ward and Denman, Franklin & McGown, all of San Antonio, for appellees.

MOURSUND, J. This suit was filed on March 16, 1907, by Ermi Fant and D. R. Fant against D. Sullivan and W. C. Sullivan. Afterwards D. R. Fant, Jr., Sutherland C. Fant, Ophie Fant Collins, R. J. Collins, Aggie Fant Ramsey, L. O. Ramsey, Byrdie Fant Tarut, C. J. Tarut, and Lucille Fant South and Jas. B. South, appellants herein, filed a motion suggesting the death of the original plaintiffs, and also the death of Mrs. Lucie A. Fant, the wife of D. R. Fant, one of the original plaintiffs, all of whom were alleged to have died intestate, and alleging, further, that D. R. Fant, Jr., Sutherland C. Fant, Ophie Fant Collins, Aggie Fant Ramsey, Byrdie Fant Tarut, and Lucille Fant South were the only surviving heirs and legal representatives of the deceased original plaintiffs. They prayed that they be made parties plaintiff in the place of D. R. Fant and Ermi Fant. The motion was granted October 10, 1911, and on same day they filed their first amended original petition, containing in substance, the following allegations:

(1) That on or about July 29, 1902, and prior thereto, J. C. Russell and Mary C. Russell, his wife, were the owners of two tracts of land situated in Hidalgo and Brooks counties, known as the "Coyote Ranch," aggregating 41,847.86 acres, said lands being particularly described in the petition.

(2) That on or about July 28, 1902, said Russells sold said ranch to D. R. Fant for $52,309.58, of which $15,000 was paid cash, and vendor's lien retained to secure remainder.

(3) That on or about the date of the purchase of the Coyote ranch D. R. Fant owned other lands, approximating 284,000 acres, also about 5,283 cattle and 28 horses, all of which property was mortgaged to defendants to secure about $300,000 due them.

(4) That about February 24, 1903, to se-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

cure an extension for one year of $260,000 due the defendants, said D. R. Fant executed to J. C. Sullivan, trustee for defendants, a deed of trust conveying all of said lands approximating 284,000 acres.

(5) That in said instrument the Coyote ranch was not specifically described, but, after describing the other lands, the following provision was inserted: "And all tracts of land in said above-mentioned counties of Cameron, Hidalgo, Starr, and Zapata, whether specifically named and described herein or not, and owned by me or claimed to be owned by me, and belonging to me, the grantor herein, D. R. Fant, and comprising any part of what is known as the Fant and Santa Rosa Ranch properties in the above-mentioned counties, are herein and hereby conveyed, and all leasehold interests, rights, and contracts held by me, said D. R. Fant, to any of the above-described lands are also conveyed; it being the intention of this instrument to convey all of the lands of the grantor herein, D. R. Fant, in the said counties of Cameron, Hidalgo, Starr, and Zapata, as well as all the interest of said D. R. Fant, whether in fee simple or leasehold, or of any right or character or kind held by the said D. R. Fant to any and all land situated in said counties aforesaid, and comprising in all about fifty leagues of 220,000 acres of land, more or less."

(6) That on or about May 13, 1903, in order to secure an extension of $63,000 of said indebtedness, D. R. Fant executed another deed of trust to J. C. Sullivan as trustee for defendants, conveying the same lands as in the preceding deed of trust, and with the same blanket provision covering all lands in Hidalgo and other counties.

(7) That default having been made in the payment of the interest due July 29, 1903, on the vendor's lien notes against the Coyote ranch, the Russells filed suit in Nueces county for their debt, and for foreclosure of their lien.

(8) That having been repeatedly notified by defendant D. Sullivan that his note for $260,000 would not be extended on February 9, 1904, said D. R. Fant began negotiating for the sale of his Santa Rosa ranch of 186,000 acres for $2.50 per acre, and on January 7, 1904, was about to effect such sale. That on or about said last-named date defendants, through their agent, Dr. Amos Graves, Sr., entered into an oral agreement with D. R. Fant, by which defendants agreed, if said Fant would cease his negotiations for the sale of said ranch at $2.50 per acre, D. Sullivan & Co. would sell at public sale all of the properties covered by the deeds of trust and chattel mortgages held by them, would buy in the properties, then sell a sufficient amount thereof to pay the Fant indebtedness to D. Sullivan & Co., together with the expense of handling the properties and 10 per cent. to J. C. Sullivan as attorney's fee, and return the remainder of said properties to Lucie A. Fant, wife of D. R. Fant, and that defendants would take up the debt on the Coyote ranch, and carry that in the same way; also, that they would pay Mrs. Fant $335 per month living expenses until the sales should be made and settlement effected.

(9) That afterwards defendants caused all of said properties, except the Coyote ranch, to be sold under their liens aforesaid, and bought same in at 50 cents per acre for land and $1 per head for cattle and horses, which was about one-tenth of the value of said properties, and thereupon defendants held said properties in trust according to the terms of their agreement of January 7, 1904; but, after selling a sufficient amount thereof to satisfy the Fant indebtedness to them, together with interest, attorney's fees, and expenses of handling the property, they refused to account for or turn over the remainder, but repudiated said trust, and claimed the properties as their own until said trust was established by final decree of this court, rendered in cause No. 19,375, on June 1, 1907, wherein D. R. Fant and Lucie Fant were plaintiffs and D. Sullivan & Co. defendants. The nature of plaintiffs' demand in said cause No. 19,375 was then pleaded, and the answer of defendants in which they repudiated said trust agreement and claimed the property as their own, and it was further alleged that upon trial of said cause said trust agreement was established, the Fant indebtedness allowed to the amount of more than $600,000, leaving a balance of $65,841 and about 97,000 acres of land in the hands of D. Sullivan & Co., which by said decree was awarded to Mrs. Lucie A. Fant as her separate property.

(10) That, although bound by the trust agreement to take up and carry the debt of J. C. and Mary Russell against the Coyote ranch, D. Sullivan & Co. failed and neglected to do so, but permitted the suit of said Russells for foreclosure to go to judgment, and the said ranch to be sold under order of sale, at which sale it was bought by said Russells for $15,000.

(11) That, after the failure of D. Sullivan & Co. to take up the Fant debt against the Coyote ranch and its sale under foreclosure as aforesaid, D. R. Fant applied to the Russells to redeem said ranch, and they prior to June, 1905, agreed that for the sum of $60,000 they would convey said ranch to Ermi Fant for the use and benefit of D. R. Fant, and H. P. Drought & Co. had agreed to loan the $60,000 upon said ranch. That the agreement so made would have been carried out by all parties, but for the interference of the defendants D. Sullivan & Co., who having full knowledge of all the transactions above mentioned, when it became apparent that the arrangement was about to be consummated, by and through their agent, J. C. Sullivan, notified H. P. Drought & Co. that they claimed a lien on the Coyote ranch

by virtue of their deed of trust dated February 24, 1903, from D. R. Fant, covering all lands and interest in lands in Hidalgo county, that said lien would be superior in whole or in part to the proposed trust deeds in favor of H. P. Drought & Co., and that, if H. P. Drought & Co. made the loan of $60,-000, they would lose a substantial part of their money, and become involved in litigation.

(12) That, because of said representations, H. P. Drought & Co. refused to pay over the $60,000, and declared the agreement canceled.

(13) That said representations of D. Sullivan & Co. to H. P. Drought & Co. were wholly false, in that whatever interest in or right to the Coyote ranch, if any, that D. Sullivan & Co. held by virtue of the blanket provision in their deed of trust, dated February 24, 1903, from D. R. Fant, were held by them, under their said agreement of January 7, 1904, in trust for the Fants, and were grossly fraudulent, in that they were made for the purpose of acquiring the ranch for themselves without paying anything therefor over and above the vendor's lien held by the Russells, and were intensely malicious, in that they were made with the intent of preventing Fant from redeeming the ranch.

The actual damages were alleged at $274,-982.88, and plaintiffs also sued for $100,000 exemplary damages. On September 28, 1911, defendants filed plea in abatement, alleging that the cause of action asserted herein was a tort unconnected with a contract, and did not survive to the legal representatives or heirs of the original plaintiffs, who had died since the bringing of the suit. The defendants on January 2, 1912, filed their first amended original answer, and pleaded that there was a misjoinder of causes of action, in that plaintiffs were attempting to sue for breach of the alleged trust agreement for the benefit of Lucie A. Fant, and also to sue for slander of title, an action on tort. They also pleaded that the suit be abated because it was an attempt to sue two parties jointly for an oral slander of the title to land. Then followed demurrer and special exceptions, general denial, and the following allegations: (1) Special denial of the authority of J. C. Sullivan to make the alleged declaration to H. P. Drought & Co. (2) That plaintiffs ought not to be permitted to maintain their supposed cause of action because on or about February 24, 1903, D. R. Fant gave defendants a mortgage upon the lands in controversy as well as other lands, and that while J. C. Sullivan had no authority to make the statement that the defendants had a mortgage on said lands which had never been satisfied, but was in full force and effect, yet said statement was true. That if there was a trust agreement between defendants and Lucie A. Fant, as alleged by plaintiffs, the defendants were in June, 1905, creditors of D. R. Fant, as well as trustee of Lucie A. Fant, and it became and was the duty of these defendants at all times to claim and assert the existence of said deed of trust or mortgage on the lands mentioned in plaintiffs' petition for their own protection, and for the benefit and protection of Lucie A. Fant. That, if it be true that said statements were made to H. P. Drought & Co., then that same were made in the utmost good faith, without any malice towards said Ermi and D. R. Fant, and without any intention or desire to injure said parties, but said statements were so made in the protection of the interest of these defendants in said properties and in the protection of the interests of said Lucie A. Fant, which interests and rights subsisted up to May 31, 1907, when, by final decree in the suit between Lucie A. Fant and these defendants, the debts due these defendants by D. R. Fant were satisfied and discharged, and said trust agreement established and settled. (3) Defendants pleaded statutes of limitation of one, two, and four years. (4) That plaintiffs should not recover because if they had a binding contract with H. P. Drought & Co., as alleged, to make said loan, when said Drought & Co. refused to perform their contract, D. R. Fant and Ermi Fant voluntarily released them from said contract, and thereby discharged these defendants from any liability to them for damages growing out of the alleged slander of title. (5) That plaintiffs should not recover because their cause of action is barred by res adjudicata, in this: That under deeds of trust and confirmatory deed by D. R. Fant and Lucie Fant to defendants they held all the title that D. R. Fant had in and to the Coyote ranch, and, if it be true that they held same in trust for Lucie A. Fant, then she held the right and title to the Coyote ranch subject to defendants' rights as creditors. That under said agreement, if it existed, it was the duty of defendants to pay off the debt due the Russells, and turn over the Coyote ranch to Mrs. Fant after their claim as creditors had been discharged. That in cause No. 19,-375 D. R. Fant and Lucie A. Fant sued these defendants to establish said trust agreement, and to recover for its alleged breach, and set up as a part of their cause of action the duty of these defendants to pay off the Russell debt, and to acquire and hold the Coyote ranch for said Lucie A. Fant, and set up the breach by these defendants of said duty, and could have recovered damages therein from these defendants for said breach and for slander of title, if any. That said issue was decided against said Lucie A. Fant in said cause, and no judgment was rendered therein against these defendants for said breach of duty and wrongful acts, and that, by reason thereof, said Lucie A. Fant and D. R. Fant and the plaintiffs who hold and assert title to the Coyote ranch in privity with them as their heirs were and are concluded by said judgment and barred from

recovering herein. (6) That plaintiffs should not be permitted to recover because the agreement between the Russells and D. R. Fant by which Ermi Fant was to take the title to the Coyote ranch was made with intent to delay, hinder, and defraud the creditors of said D. R. Fant, and especially D. Sullivan and W. C. Sullivan, composing the firm of D. Sullivan & Co.

The plea of abatement and all exceptions were overruled. The case was tried before a jury, and, after plaintiffs had introduced their evidence, defendants filed a motion for an instructed verdict in their behalf, which was overruled. The case was submitted to the jury upon special issues, and verdict returned. Defendants then filed motion asking for judgment, notwithstanding the verdict, which was granted. Both parties filed motion for new trial. That of plaintiffs was contested by defendants, and was overruled by the court, and that of defendants was never presented to the court and died with the term. Plaintiffs appealed.

The jury, by their verdict, found that J. C. and Mary Russell in June, 1905, offered to D. R. Fant to convey to him, or his daughter, Ermi, within a reasonable time thereafter, the property called the "Coyote Ranch," and release the balance of the judgment held by the Russells against Fant, on payment of $60,000; that H. P. Drought would have loaned the money to Ermi Fant and D. R. Fant with which to pay the Russells the purchase money for said ranch, but for the statement made to Drought by J. C. Sullivan on June 16, 1905, concerning the claim on said ranch by D. Sullivan & Co.; that when J. C. Sullivan made said statement to Drought he was acting as the representative of and with authority from D. Sullivan & Co.; that, when D. Sullivan & Co. were endeavoring to secure the Coyote ranch by tendering certain money to the Russells or bringing the suit therefor, they were endeavoring to secure the same for themselves personally, and not in trust for Mrs. Fant; that D. R. Fant was endeavoring to secure the Coyote ranch by putting the title in his daughter Ermi's name for the purpose of preventing D. Sullivan & Co. from levying on it under certain judgments they then had against him; ·that the reasonable cash market value of said ranch on June 17, 1905, was $2 per acre, and at the time of the trial was $8 per acre; that the statement made by J. C. Sullivan to H. P. Drought on June 16, 1905, was maliciously made, and made for the purpose and with the intent of preventing Fant from borrowing the money with which to pay for the Coyote ranch; that no amount of money should be awarded to plaintiffs as exemplary damages.

In order that the questions raised may be better understood, we summarize briefly the material facts established upon the trial:

A deed of trust was made by D. R. Fant on February 24, 1902, to secure D. Sullivan & Co. in the payment of a large sum of money owing them by Fant. This deed of trust, in addition to specific descriptions of lands, contained the general clause copied in paragraph 5 of our statement of the allegations in plaintiffs' petition. On July 29, 1902, D. R. Fant bought from J. C. and Mary Russell the two grants of land known as the "Coyote Ranch," the grantors retaining a vendor's lien to secure the payment of $37,309.58 of the purchase money. On February 24, 1903, and May 13, 1903, D. R. Fant executed deeds of trust to J. C. Sullivan as trustee for D. Sullivan & Co. to secure the extension of debts due D. Sullivan & Co. These instruments were prepared by J. C. Sullivan, and he copied the general clause contained in the deed of trust given February 24, 1902. At the time he did not know that the Coyote ranch had been acquired since the execution of the first deed of trust, and would be included under the general clause. Fant failed to pay the interest due the Russells on July 29, 1903, whereupon the latter on September 21, 1903, sued for their debt and for foreclosure of their lien, but did not make D. Sullivan & Co. a party to the suit.

About January 7, 1904, D. Sullivan & Co., through their agent, Dr. Amos Graves, entered into an agreement with D. R. Fant, by which the Sullivans were to sell at public sale all the property covered by deeds of trust and chattel mortgages from Fant to the Sullivans, then to buy in the property at such sales, and sell a sufficient amount thereof to pay the Fant indebtedness to them, together with 10 per cent. to J. C. Sullivan as attorney's fee, and return the remainder of the property to Lucie A. Fant, wife of D. R. Fant, also to pay Mrs. Fant $335 per month living expenses until the sales should be made and a settlement effected. J. C. Sullivan as trustee in April and May, 1904, sold the Fant cattle and horses, and also lands situated in several counties, all the property being bid in by D. Sullivan & Co., the land at 50 cents per acre and the stock at $1 per head, which sums were credited on the indebtedness, still leaving a very large sum unpaid. The deed to the Santa Rosa ranch was dated May 30, 1904, and is the only deed made by said trustee offered in evidence. The Coyote ranch was never sold by J. C. Sullivan. He testified that at the time of the foreclosure he was not aware that Fant owned other property; that knowledge was brought to him afterwards. Evidently by this he meant the Coyote ranch. It appears that suit was filed on August 7, 1903, in the district court of Travis county by the state to recover the two grants composing the Coyote ranch. On May 4, 1904, judgment was rendered in the Russell foreclosure suit, and the question arose as to what should be done with regard to redeeming the Coyote ranch from the Russells. J. C. Sullivan on

June 22, 1904, wrote Mrs. Lucie A. Fant, expressing the opinion that the state would lose the suit, but asking whether or not, having regard for the present status of the case, she wished D. Sullivan & Co. to take up the Russell & Ward loan of $52,232.80. On June 30, 1904, Messrs. Ogden & Brooks wrote Mrs. Fant, referring to the J. C. Sullivan letter to her, and, stating they had examined the abstract of title furnished by J. C. Sullivan, advised her against investing about $48,000 for the purchase of the Coyote ranch. On July 5, 1904, John Closner, sheriff of Hidalgo county, executed deed to the Russells conveying the Coyote ranch for a consideration of $15,000; the sale being made under said judgment of May 6, 1904. On October 24, 1904, D. R. Fant and Lucie A. Fant executed to D. Sullivan & Co. a deed confirming them in the titles to the lands purchased by them under the deeds of trust, and also conveying other lands, including the Coyote ranch. This deed was made for the purpose of enabling the Sullivans to effect advantageous sales of the property under the trust agreement. The state suit was finally won by the defendants in the lower court, and judgment affirmed in the appellate courts. The Sullivans paid Scott a $400 fee to represent them in said case in the higher courts, and also paid Ogden & Brooks their fee for examining the title. It appears from letter of G. R. Scott to Drought dated June 6, 1905, that J. C. Sullivan had made an effort to get the Russell foreclosure sale postponed until the state suit could be heard from. Scott testified by deposition that he asked J. C. Sullivan after the foreclosure why he did not pay off the balance of the Russell judgment, and clear up his title to the Coyote ranch, and Sullivan said the land was in litigation, and they did not care to take the chance of losing it in the suit then pending at Austin, but, if the state lost out, he would tender the money in settlement of the judgment. After the termination of the litigation with the state, D. R. Fant began negotiations with H. P. Drought & Co. for the purpose of borrowing $60,000 with which to purchase the Coyote ranch from the Russells, and in the meantime D. Sullivan & Co. also decided to redeem said ranch from the Russells, claiming the right as junior lienholders to pay off the Russell claim, and thus hold the land under their deed of trust and confirmatory deed.

The firm of H. P. Drought & Co. was composed solely of H. P. Drought. From May 31, 1905, to June 16, 1905, a brisk correspondence took place between H. P. Drought & Co. and G. R. Scott, attorney for the Russells, during the course of which Drought was apprised of the fact that the Sullivans had asserted a claim to the land under a deed of trust containing a general clause. Drought & Co. stated the abstract would have to be brought down to date and everything included appertaining to the title, and they would have to satisfy themselves that, if the Sullivans acquired any right to redeem the property, they had lost such right. On June 14th Drought & Co. wrote Scott they had not received abstracts, and had wired for same. In the meantime deeds of trust had been prepared and signed by Ermi Fant, covering the Coyote ranch, and recorded on June 8th. They were given to secure the two notes of Ermi Fant and D. R. Fant for $30,000 each. The deed from the Russells was to be made to Ermi Fant, but the real ownership of the land was to be in D. R. Fant. J. C. Sullivan testified that about June 15th or 16th, either through Stayton or Edwards, by telephone or letter, he learned that the deeds of trust had been recorded or were about to be recorded, and, as it was on the eve of his going to Corpus Christi to make a tender to Russells of the amount due them on the Coyote ranch, he telephoned Mr. Drought and asked if there was any truth in the report that he was contemplating lending Fant the money, and Drought replied that it was true. Later Drought and he met on the stairs leading to his office, and he asked him whether he intended to make the loan, and Drought said he would, and asked on what grounds the Sullivans claimed the land, and then J. C. Sullivan made the statement set out in plaintiffs' petition, and upon which this suit is based. On the next day he went to Corpus Christi, and tendered to the Russells the sum of $48,018.96, and they refused to accept the money, demanding $55,643. J. C. Sullivan testified that Judge Russell wanted, in addition to his debt, some $7,000 to cover what he had contracted to pay for the defense of the state suit and the costs of court. On June 16th Drought & Co. wrote Scott and on June 17th wrote Fant, in both letters stating the matters communicated by J. C. Sullivan, and declined to make the loan. In the letter to Scott he stated that he suggested to J. C. Sullivan that possibly an arrangement could be made with Fant by which the title might be quieted and Fant put in shape to borrow on it, but that Sullivan could hold out no hope that any such arrangement would be reached. J. C. Sullivan denied that this occurred in the conversation. These letters speak as if only one conversation had taken place between J. C. Sullivan and Drought, but the latter also testified that the first conversation was over the phone and the second on the stairs leading to Sullivan's office. In the letter to Fant, Drought also stated that J. C. Sullivan said they had made an offer to Judge Russell to redeem the Coyote ranch, but that Russell had declined the offer, and wanted several thousand dollars more than was due, and they were going to make another tender, and, if same was not accepted, they would bring suit to redeem. The letter also stated that as they had no desire to be involved in litigation, and

as it was expressly stated to them that D. Sullivan & Co. were not asserting any claim to the land, and would not assert any, they felt it would be unwise to go further in the matter. H. P. Drought testified that his letter to Fant correctly stated just what happened at the time. On October 4, 1905, D. Sullivan & Co. sued the Russells for the purpose of redeeming the ranch, which suit was dismissed, but the date of such dismissal is not shown. D. Sullivan testified it was dismissed because he had submitted the matter to other attorneys, and received a written opinion, in which they stated they did not think his mortgage was comprehensive enough, and he would probably lose the suit. Both members of the firm of D. Sullivan & Co. and also J. C. Sullivan testified the statement made by the latter to Drought & Co. was not authorized by the firm.

As shown by petition in case No. 19,375 in the district court of Bexar county, as late as February, 1905, D. Sullivan, in a conversation with Mrs. Fant, expressly recognized the trust agreement, and D. Sullivan & Co. paid her money in pursuance thereof until about April 1, 1906, when they first repudiated same. On November 19, 1906, Lucie A. Fant, joined by her husband, D. R. Fant, filed suit against D. Sullivan & Co. to establish the trust agreement for the benefit of Lucie A. Fant and for an accounting. In the first amended original petition filed in said suit and introduced in evidence in this case it was alleged that the Sullivans had agreed that all the excess in said property should be turned over to Lucie A. Fant after paying the Sullivan indebtedness, and that it was especially agreed that the same was not to be, and would not be, paid or turned over and delivered to D. R. Fant, also that they would pay off the Russell indebtedness against the Coyote ranch, and carry same until a sufficient amount of Fant property could be sold to pay such indebtedness as well as the other indebtedness; that they failed to redeem said ranch, and permitted the Russells to obtain judgment and buy in the land. It is also alleged that D. Sullivan & Co. sold property for the aggregate sum of $633,791.95, but the petition, as copied in the statement of facts herein, utterly fails to show the dates of any of the sales made by the Sullivans, except one of 60 acres to Lasater, by deed dated September ——, 1905. Nor do we find any other evidence in the record which shows the dates of any sales made by D. Sullivan & Co. of the lands bought in by them. D. Sullivan in his deposition in the Sullivan v. Russell Case, after stating the various sales made under mortgages and deeds of trust and stating he bought the lands under all of same, uses the following language: "The Weedy ranch in Live Oak county is the only land that has been sold since the various sales made of the Fant lands by D. Sullivan & Co., 45,000 acres at

$2 per acre." He also testified that the indebtedness by Fant at that time was $17,492 with 10 per cent. interest from May 3, 1904, and $269,102.90 with 10 per cent. interest from March 27, 1905. The answer filed by the Sullivans in case No. 19,375 denied the existence of the trust agreement, alleged an indebtedness on April 5, 1904, of $444,000, and alleged their foreclosure on said date leaving a balance due of $265,825.83 bearing 10 per cent. interest from that date. The decree rendered in said case on May 31, 1907, establishes the trust agreement as claimed by plaintiffs therein, decreed that the Sullivans had sold enough of the Fant property to pay all their claims against Fant, and that the Fants recover the unsold trust property amounting to more than 90,000 acres of land, and about $65,000 in money. D. R. Fant left a will, which was duly probated, bequeathing all of his property to his wife, Lucie A. Fant. She died intestate shortly afterwards, and her children are the plaintiffs in this case.

[1] By the first two assignments appellants contend that the court erred in rendering judgment for defendants, notwithstanding the verdict of the jury. The record fails to disclose the reasons actuating the court in taking such step, but appellees in their brief say this ruling was justified because the issue of the truth or falsity of the alleged slanderous statement was not submitted to the jury on account of the evidence being undisputed to the effect that said statement was true; and, this being the case, the judgment of the court was not rendered contrary to the verdict, but was rendered on an issue entirely aside from the same. We think it was rendered contrary to the verdict in a manner prohibited by our statute when it says the judgment shall be entered in conformity with the verdict, or the verdict set aside, and a new trial granted. Sayles' Civ. Stat. arts. 1330, 1331, 1332, 1333, 1335; Brown v. Renfro, 57 Tex. 332; H. & T. C. R. R. Co. v. Strycharski, 92 Tex. 9, 37 S. W. 417; Ablowich v. Greenville Nat. Bank, 95 Tex. 431, 67 S. W. 79; Waller v. Liles, 96 Tex. 23, 70 S. W. 17; Henne & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 608; S. W. Tel. & Tel. Co. v. James, 41 Tex. Civ. App. 560, 91 S. W. 655; Rich v. Western Union Tel. Co., 110 S. W. 95; Davis v. Pullman Co., 34 Tex. Civ. App. 621, 79 S. W. 636; Casey-Swasey Co. v. Fire Ass'n Co., 32 Tex. Civ. App. 158, 73 S. W. 865. In the case of Davis v. Pullman, supra, Justice Neill held that in Texas it is made the duty of the court to enter its judgment in conformity with the verdict, whether it be correct or not, and whether the error in the verdict, if there be any, arose from erroneous instructions or rulings by the court, or from a misinterpretation of the evidence by the jury. In the case of Henne & Meyer v. Moultrie, 97 Tex. 217, 77 S. W. 607, it is held that the trial court cannot disre-

gard a verdict properly returned and enter such judgment as the party is entitled to upon the undisputed evidence, while the Court of Civil Appeals can do so; the inconsistency arising out of legislative enactments applying to the different courts. If appellees' contention is correct, the trial court could conclude that, by reason of the evidence upon a certain issue being undisputed, he would render judgment for one of the parties, but, before doing so, would submit the other issues to see whether the jury would give additional grounds upon which to base the judgment already decided upon. Our statute does not authorize that method of trying cases. The court must decide whether the facts are sufficient to go to a jury. If they are not sufficient, a verdict should be instructed, but having decided, whether rightly or wrongly, that the facts shall go to the jury, under article 1331 (Sayles' Civ. Statutes) all issues must be submitted, and, if the jury is permitted to return a verdict, whether the same be correct or incorrect, whether it disposes of the matters in controversy or not, then article 1333 (Sayles' Civ. Statutes) fastens the duty upon the court of either rendering judgment according to the verdict or setting it aside and granting a new trial. We are of the opinion that the court erred in rendering judgment notwithstanding the verdict.

[2] Appellants contend that the case should be reversed and rendered because the issue of the truth or falsity of the statement and all other issues not submitted to the jury should be presumed to have been found by the court in favor of the appellants on account of the jury having returned the verdict in their favor. This contention is based upon that portion of article 1331 (Sayles' Civ. Statutes) which provides that upon appeal an issue not submitted and not requested by a party to the cause shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to sustain such a finding. The provision cannot be applied in this case. To do so we would have to assume that, if the court had not rendered judgment for appellees, he would necessarily have rendered same for appellants, when he might have set aside the verdict and granted a new trial. It can only be applied to aid a judgment actually entered. Besides, in this case the issue of the truth or falsity of the statement was requested by appellees to be submitted, and they have a cross-assignment complaining of the refusal of the court to do so. In addition, it would have to be determined there was evidence to sustain the finding thus presumed.

This brings us to appellees' contention that in fact the evidence indisputably shows the statement made by J. C. Sullivan was true, and therefore the court below should have instructed a verdict for appellees, and this court, even though holding the court erred in rendering judgment notwithstanding the verdict, should affirm this judgment. Appellees, by their cross-assignments Nos. 13, 15, and 16, directly assail the ruling of the court in refusing to grant their motion to instruct a verdict for them.

[3] The rule is well established in Texas that appellate courts will affirm all judgments of the court below when the evidence is such that the higher court can say that it did not admit of any verdict or judgment other than that which was rendered. Bowles v. Brice, 66 Tex. 724, 2 S. W. 729; Railway v. Uribe, 85 Tex. 389, 20 S. W. 153; Wheless v. Davis & Son, 122 S. W. 930; Hoffman v. Buchanan, 57 Tex. Civ. App. 368, 123 S. W. 168; Sanborn v. City of Amarillo, 42 Tex. Civ. App. 115, 93 S. W. 473; Wright v. Hooker, 55 Tex. Civ. App. 47, 118 S. W. 765; Ziehme v. Miller, 117 S. W. 1010; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 736.

[4, 5] We have found no case in which our courts have affirmed a judgment rendered notwithstanding the verdict. In most cases the verdict covers all the issues, and, upon the theory that a motion for judgment non obstante veredicto concedes the facts to be as found by the verdict, the judgment could not be affirmed in such a case on a question of fact, even though the verdict was contrary to the undisputed facts. In cases where special verdicts are returned the findings are conclusive between the parties as to the facts found, unless set aside on motion for new trial, and cannot be questioned on appeal unless such motion was made below. It appears, then, that the higher courts cannot affirm a judgment rendered non obstante veredicto by reason of the insufficiency of the evidence upon any matter on which the jury made a finding. However, if there be undisputed evidence outside of the facts found by the jury, by reason of which a judgment should have been instructed for the party in whose favor the judgment was rendered, we see no reason why the judgment should not be affirmed under the general rule above stated. This holding is not based upon article 1027 (Sayles' Civil Statutes) relating to cases reversed, but upon the broad rule, existing long prior to the adoption of said statute, providing that the appellant is not prejudiced by a judgment entered under erroneous procedure if by a different process the court should have entered the same judgment.

[6, 7] The issue of the truth or falsity of the statement made by J. C. Sullivan was not submitted to the jury. The jury found the statement to have been made maliciously and with intent to prevent Fant from borrowing the money from Drought but, in order to make a case, it must also be shown that the statement was false. Newell in his work on Slander and Libel (2d Ed.) p. 208, § 8, says: "Where a person possesses an estate

or interest in any real or personal property, an action lies against any one who maliciously comes forward and falsely denies or impugns the plaintiff's title thereto, if thereby damage follows to the owner. The statement claimed as slanderous must be false. If there be such a flaw in the title as the defendant asserted, no action lies. And it is for the plaintiff to prove it false, not for the defendant to prove it true. And the statement must be malicious. If it be made in the bona fide assertion of defendant's own right, real or supposed, to the property, no action lies. But, whenever a man unnecessarily intermeddles with the affairs of others with which he is wholly unconcerned such officious interference will be deemed malicious, and he will be liable if damage follow."

[8] If the evidence wholly failed to show the falsity of the statement made by Sullivan, then appellees were entitled to an instructed verdict upon that ground. In plaintiffs' petition the deed of trust was described just as J. C. Sullivan described the same to Drought, and it is not contended that said J. C. Sullivan's statement was not literally true, but it is alleged that said representations were false, "in that whatever interest in or right to the Coyote ranch, if any, that D. Sullivan & Co. held by virtue of the blanket provision in their deed of trust, dated February 24, 1903, from D. R. Fant, were held by them under their said agreement of January 7, 1904, in trust for the Fants." The evidence fails to show that such interest was held in trust for the Fants. Under the trust agreement the surplus of property was to be held for Mrs. Lucie A. Fant, and it was expressly stipulated or understood that same was not to be held for or delivered to D. R. Fant. The evidence fails to show that Mrs. Fant ever waived any of her rights in the matter, or agreed that D. Sullivan & Co. could waive or relinquish any of her rights. D. R. Fant had parted with his interest in the surplus. The evidence also discloses that on June 16, 1905, the interests held by D. Sullivan & Co. in the Coyote ranch and other property were still held by them for the joint benefit of themselves and Lucie A. Fant. The Sullivans, bidding at sales made under their deeds of trust, had bought in more than enough property to pay off their indebtedness when the same was finally sold by them, but the evidence fails to show that any of said property had been sold by June 16, 1905. Nor does the evidence show that on June 16, 1905, the property then held by Sullivan estimated at its then market value exceeded the indebtedness due the Sullivans. Appellants contend in their reply to appellees' brief that at the time of the statement by J. C. Sullivan "the Fants did not owe defendants a cent for the reason that the Sullivans then had in their possession and claimed as their own (having repudiated the

Fant trust) property belonging to the Fants to the value of several hundred thousand dollars over and above the Fant debt." To support this statement, they refer to those portions of the statement of facts containing the petition, answer, and judgment in cause No. 19,375, filed April 27, 1907, in the district court of Bexar county. We have searched diligently and fail to find the evidence sustaining this contention. The petition charges expressly that the Sullivans for the first time repudiated the trust agreement about April 1, 1906, which was over nine months after the statement was made by J. C. Sullivan. The petition gives only one date of the sale of property by the Sullivans, viz., 60 acres to Lasater on September, ——, 1905, so it cannot be said the deed of trust was satisfied on June 16, 1905, especially in the absence of evidence that the property bid in by Sullivan, when estimated at its reasonable market value on that date, was sufficient to pay all of the Fant indebtedness. Nor do we think the evidence shows that on June 16, 1905, the Sullivans were claiming the Fant property bid in by them as their own as against Mrs. Lucie A. Fant. The evidence shows that the Fant property was sold under the Sullivans' deeds of trust in April and May, 1904, and bid in by the Sullivans. The Coyote ranch was overlooked, and not sold at that time. In October, 1904, D. R. Fant and Lucie A. Fant made the confirmatory deed to the Sullivans, conveying all the land bid in by the Sullivans and other property, including the Coyote ranch. The inclusion of other property than that bid in by the Sullivans establishes the fact that Fant and wife did not intend that the bidding in of the property constituted payment of Sullivans' debt. It was undoubtedly their intention that the Sullivans should assert title to all the property in themselves until the object of the agreement was fully carried out, and until they conveyed to Lucie A. Fant the surplus coming to her. In pursuance of the original agreement, and prior to the execution of the confirmatory deed, a consultation appears to have taken place between J. C. Sullivan and Mrs. Fant in regard to the advisability of redeeming the Coyote ranch by paying off Judge Russell before he could sell same under his judgment. Other attorneys were consulted, who gave Mrs. Fant a written opinion advising against the investment of the sum necessary to redeem it, such advice being based upon defects in the titles and the danger of losing the land to the state in the suit then pending. It appears from a letter written by Scott to Drought that J. C. Sullivan tried to get the Russells to postpone the foreclosure sale until after the state suit should be terminated, but they declined to do so. Such sale was made before the state lost its suit, and thereafter the only right of redemption which could be asserted was that of D. Sul-

livan & Co. as junior lienholders under their deed of trust, the Russells having failed to make them parties to the foreclosure suit. We think the facts are ample to show that it was the intention of the parties that such right should be claimed by the Sullivans for the benefit of Mrs. Fant, just as it was intended they should assert deed of trust after deed of trust and mortgage after mortgage until all was reduced to their possession, regardless of the fact that they might by the first few sales have acquired enough property to pay their debt when the same should be sold. Fant and wife appear to have held the view, not only that the Sullivans had such right, but that it was their duty to assert their claim to the Coyote ranch, because in said suit No. 19,375 they alleged that the Sullivans bound themselves and agreed as a part of the trust agreement to redeem said ranch from the Russells' claim, and they failed to comply with such portion of the agreement. To redeem it the Sullivans had to cling to the claim under their deed of trust, because the Fants had lost their right to redeem it, and we do not think Fant could be heard afterwards to complain that the Sullivans did what the agreement contemplated they should do. Taking these matters into consideration, we fail to see how the assertion of their claim constituted a claim of ownership by Sullivans as against Mrs. Fant.

Whether Sullivan & Co. breached their trust agreement by not redeeming the Coyote ranch, and whether they were justified in dismissing their suit against the Russells, are matters not before us for decision in this case. The issue was one of slander of title, and we hold the court should have instructed a verdict for appellees, because the evidence wholly failed to show the falsity of the alleged slanderous statement.

The third, fourth, and fifth assignments are disposed of by what we have said, and are overruled.

[9] The sixth assignment is based upon the failure of the court to grant a new trial on account of newly discovered evidence. This evidence all related solely to the issue whether H. P. Drought & Co. would have made the loan had it not been for the statement made by J. C. Sullivan. It showed that on June 16th the abstract to the Coyote ranch had been received by H. P. Drought, and same omitted the Sullivan deed of trust dated in 1903. The court below conceded that the motion showed diligence to procure the evidence, but held that, when considered with the other evidence, no case was made authorizing a judgment for appellants. We have already arrived at the conclusion that no case was made, even conceding that Drought would have made the loan except for the statement by J. C. Sullivan, as was found by the jury. Therefore newly discovered evidence on this issue alone is no

ground for granting a new trial. The assignment is overruled.

We conclude the judgment should be affirmed, which renders it unnecessary to pass upon appellees' other cross-assignments.

Judgment affirmed.

## On Motion for Rehearing.

Appellant contends earnestly that the judgment affirmed is void on its face, and therefore cannot be affirmed by this court. If this were conceded to be correct, then it might become the duty of this court, after arriving at the conclusion that appellees are entitled to judgment, to reverse the judgment of the lower court, and here render judgment that appellants, who were plaintiffs below, take nothing by their suit.

[10] But we take it that the mere fact that the judgment itself recites that the court rendered same notwithstanding the verdict would not render such judgment void. We see no useful purpose to be subserved by sending the case back for a new trial on account of the shadowy objection that the judgment below recites that it was rendered on a motion for judgment notwithstanding the verdict. Nor do we deem it necessary, merely on account of such recital, to reverse the judgment, and here render judgment to the same effect. Appellants also insist that the decision in this case cannot be reconciled with that of our Supreme Court in the case of Ablowich v. Bank, 95 Tex. 431, 67 S. W. 79. It should be borne in mind that the Ablowich Case was not submitted upon special issues, but upon a charge specifically submitting the issues both of debt and mortgage, and the jury found only upon the debt, which was held by the Supreme Court to constitute a finding against the mortgage. The trial court rendered judgment for foreclosure of the mortgage in the face of an express finding by the jury against it, which was held to constitute error. In this case, as expressly stated in our opinion, the judgment that appellants take nothing by their suit can be based upon undisputed evidence upon an issue not submitted to the jury and upon which the jury made no finding.

[11] Appellants urge that we are setting a precedent by reason of which judgments non obstante veredicto will become a matter of frequent occurrence, and trial courts will contradict verdicts. We consider this fear groundless. A perusal of our opinion will show that we do not hold that the trial court can contradict the verdict, and that it is only when the court should have instructed a verdict upon an issue not submitted to the jury that we feel authorized to ignore the verdict upon issues which, by reason of the undisputed evidence on the other issue, become immaterial.

[12] Appellants now contend that the evidence shows that the Coyote ranch was to be excepted from the Sullivans' claim under

the deeds of trust, and that it was really to be freed from debt for D. R. Fant, out of the proceeds of the property transferred to Mrs. Fant under the trust agreement. The petition in cause No. 19,375, which undertakes to describe the trust agreement, certainly contains no express provision to that effect, nor does it contain any language from which any such intention can be inferred. The petition alleges that Sullivan & Co. should sell "all of the property covered by their deeds of trust and chattel mortgages, and buy the same in at such sales thus vesting title in them." It further alleges that it was agreed "that they would return all of the excess and equity in said property to said Mrs. Lucie A. Fant, wife of the said D. R. Fant, for her sole use and benefit, especially agreeing and declaring that the same was not to, and would not be, paid or turned over and delivered to D. R. Fant, and would carry the indebtedness for them until a sufficient amount of property could be sold with which to fully pay off and discharge the same, thus giving them all the time that would be necessary in which to pay off said indebtedness." It was further alleged "that they would pay off the indebtedness and incumbrance against the Coyote ranch, which consisted of about 42,000 acres, in favor of J. C. and Mary Russell, and likewise carry said indebtedness until a sufficient amount of the property belonging to plaintiffs could and would be by them sold with which to pay off said entire indebtedness, including said indebtedness which they might and would take up with and to the said J. C. and Mary Russell." We find not a word which can be construed as a provision enuring to the special benefit of D. R. Fant, and the fact that mention was made of the Coyote ranch is accounted for by the evidence showing that the Russell indebtedness was due and pressing, suit had been instituted, and some arrangement had to be made at once, so, after providing for the extension of all the indebtedness due the Sullivans until sufficient property should be sold, it was natural to make special mention of the large indebtedness to others which they were called upon to pay and carry. This construction is supported by the fact that Fant was to get none of the surplus, by the evidence which shows that Mrs. Fant interested herself to the extent of procuring an opinion from Ogden & Brooks with respect to the advisability of investing the money required to pay off the Russell indebtedness pending the determination of the suit instituted by the state for the land, by the fact that Fant executed to the Sullivans a confirmatory deed conveying other lands than those embraced in the deed of trust, by the fact that no money was to be turned over to Fant, but a stipulated amount per month was to be delivered to Mrs. Fant. There is no evidence that Fant interested himself in any way in the Coyote ranch after such trust agreement was made until he undertook to buy it back from the Russells in 1905. In fact, the evidence strongly indicates that Fant, with his consent, was retired from all participation in the ownership and management of the estate at that time owned as the community property of himself and wife. Appellants say the trust agreement was violated when Sullivan permitted the Russell foreclosure suit to go to judgment. If so, recovery for such breach should have been obtained in the other suit.

Appellants request us to correct that portion of paragraph 8 of our statement of the contents of the petition in this case which reads, "And that defendants would take up the debt on the Coyote ranch and carry that in the same way," so as to read as follows: "Would take up the Fant debt on the Coyote ranch and carry that in the same way." This request must be granted. In view of the allegation in the petition in cause No. 19,375, hereinbefore set out, we must confess that we fail to see wherein the difference is vital as contended by appellants.

Appellants also object to our finding that the Coyote ranch was included in the confirmatory deed. This is stated in appellee's brief, and not denied in appellant's reply to same, and we must have taken it for granted, as we fail to find it in the record. The statement of facts contains the notation "confirmatory deed omitted." We withdraw the finding.

Objection is also made to another portion of the opinion, concluding with the sentence, "Taking these matters into consideration, we fail to see how the assertion of their claim constituted a claim of ownership by the Sullivans as against Mrs. Fant," which sentence was particularly objected to. We still say the assertion of such claim is in itself no evidence that the Sullivans were claiming adversely to Mrs. Fant, even though such act was contrary to the interests of Fant himself; that this fact alone would not prove a repudiation of the trust because in line with the trust agreement. We see no merit in the objections made to this portion of the opinion, nor do we think it conflicts with the findings of the jury.

The first finding of the jury relating to the intent with which Sullivan tendered the money to the Russells and brought suit against them related to events occurring subsequent to the time when J. C. Sullivan made the statement, and the other finding was that the statement was maliciously made. The allegation of the petition is that it was malicious, in that it was intended to prevent Fant from redeeming the ranch. Such a finding would not conflict with the statements objected to. The portion of the opinion objected to was in answer to appellants' contention made in their printed reply to appellees' brief "that the Fants did not owe defendants a cent, for the reason that the Sullivans then had in their posses-

sion and claimed as their own (having repudiated the Fant trust) property belonging to the Fants to the value of several hundred thousand dollars over and above the Fant debt." This contention is virtually an admission that, to show the falsity of the alleged slanderous statement, appellants were required to show, first, that the Sullivans had at the time of the statement repudiated the trust agreement; second, that they had property in their hands belonging to the Fants of such value as equalled or exceeded the debt due the Sullivans by the Fants. There is no evidence to show the value of the property then in the hands of the Sullivans, nor any evidence that sufficient property had been sold at that time to pay off such debt. As pointed out in our opinion, the alleged slanderous statement was literally true, and its falsity, in fact, was not shown by any testimony showing the satisfaction of the deed of trust. Had the evidence shown that sufficient property had been sold to pay the Sullivan indebtedness, or that the Sullivans held property of the Fants of the value at that time equal to the indebtedness, then the question of repudiation would be of great importance, because, if the trust was repudiated and the indebtedness paid, there would be no further ground for asserting the lien created by the deed of trust.

We deem it unnecessary to go into the question of repudiation further than to say that we did not overlook the testimony of D. Sullivan taken in the suit against the Russells, wherein he stated there was no trust agreement and had been none. The date of this testimony is not given in the record, nor the date when said case was dismissed. Therefore we do not know whether this testimony was given before or after the date when the Fants in the other case alleged the trust to have first been repudiated, viz., about April 1, 1906. It would seem that said allegation in the other petition would have much weight, but appellants virtually contend that the finding of the jury that, when the money was tendered to the Russells and suit brought, the Sullivans intended to acquire the land for themselves is inconsistent with the admission made in the former pleading by the Fants, and, further, that it is sufficient to establish that the repudiation had taken place at the time the statement was made by J. C. Sullivan, even though such statement was made prior to the tendering of said money and bringing of said suit.

[13] We are requested to make and file as a finding of fact a couple of pages of the petition in cause No. 19,375, which include the allegations of the creation of the trust agreement and a number of allegations of matters leading up to said agreement. We consider that the material portions of said pleading have been stated by us, and we decline this request for that reason, and also because we do not consider that the mere fact of a judgment being rendered upon a petition establishes the truth of every fact stated in said petition, whether it be a fact necessary to be found or only a fact subsidiary to or leading up to the essential facts.

Objection is also made to our statement that in the petition in cause No. 19,375 it was alleged "that they failed to redeem said ranch and permitted the Russells to obtain judgment and buy in the land." This objection is well taken, and the statement withdrawn. We doubtless made the mistake by reading allegation No. 10 of the petition in this case, as set out in our opinion, and got the idea it was in the other petition.

The motion is overruled.